IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Edwin A. Benzel,<br><br>        Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,[1]<br><br>        Defendant. | C/A No. 0:13-664-RMG-PJG<br><br>**REPORT AND RECOMMENDATION** |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Edwin A. Benzel ("Benzel"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be reversed and the case remanded.

### ADMINISTRATIVE PROCEEDINGS

In October 2009, Benzel applied for DIB alleging disability beginning April 25, 2003. Benzel's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on July 13, 2011, at which Benzel, who was represented by Kate Torgerson, Esquire, appeared and testified. The ALJ, after hearing

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the named defendant because she became the Acting Commissioner of Social Security on February 14, 2013.



testimony from a vocational expert, issued a decision on November 3, 2011 denying benefits. (Tr. 63-71.)

Benzel was fifty-three years old on the date he was last insured for DIB. (Tr. 176.) He has a high school education with past relevant work as an assistant manager at a storage facility and as a machinist/tool crib attendant. (Tr. 70, 204.) In his application, Benzel alleged disability due to joint arthritis, degenerative disc disease, a back impairment, bilateral knee impairments, and a right hand impairment. (Tr. 203.)

The ALJ found:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2008.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of April 25, 2003 through his date last insured of June 30, 2008 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: Degenerative joint disease, bilateral knee impairments, and left knee status post arthroplasty (20 CFR 404.1520(c)).

* * *

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

* * *

5. . . . [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he must be afforded a sit/stand option on an occasional basis; limited to occasional climbing, balancing, crawling, stooping and crouching; with no concentrated exposure to hazards such as moving machinery or unprotected heights and is further limited to unskilled work.

* * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

* * *

7. The claimant was born . . . [in] 1955 and was 53 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant



> subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled whether or not he has transferable job skills (See SSR 82-41 and 20 CFR 404.1568).
>
> 10. Through the date[] last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
> * * *
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 25, 2003, the alleged onset date, through June 30, 2008, the date last insured (20 CFR 404.1520(g)).

(Tr. 65-71.) Benzel filed a request for Appeals Council review which was denied on January 14, 2013, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

> (1) whether the claimant is engaged in substantial gainful activity;



  (2)  whether the claimant has a "severe" impairment;

  (3)  whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

  (4)  whether the claimant can perform his past relevant work; and

  (5)  whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.  Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Benzel raises the following issues for this judicial review:

Point I:     The ALJ Failed to Follow the Treating Physician Rule and Failed to Properly Determine Mr. Benzel's Residual Functional Capacity[.]

Point II:    The ALJ Failed to Properly Evaluate Mr. Benzel's Credibility[.]

(Pl.'s Br., ECF No. 9.)

## DISCUSSION

**A.     Residual Functional Capacity**

As noted above, the ALJ found that Benzel had the residual functional capacity ("RFC") to perform unskilled, light work with a sit/stand option on an occasional basis. The ALJ further limited Benzel to occasional climbing, balancing, crawling, stooping, and crouching.  (Tr. 67.)  Benzel



argues that the ALJ erred in failing to comply with Social Security Ruling ("SSR") 96-8p in finding he could perform a range of light work. He contends that the ALJ failed to provide a narrative discussion of the evidence supporting the specified limitations.

A claimant's RFC "is the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). In assessing RFC, an ALJ should scrutinize "all of the relevant medical and other evidence." See 20 C.F.R. § 404.1545(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's RFC.

The Commissioner contends the ALJ's RFC determination is supported by substantial evidence based on the limited medical evidence in the record (which covers only fourteen months of the alleged six-year period of disability),[3] Benzel's varied activities of daily living (caring for personal hygiene needs, shopping with assistance, handling finances, socializing at church and with friends and family, performing light household chores, and taking short trips), the absence of objective findings supporting Benzel's allegations of disabling symptoms and limitations, and an absence of an opinion from a treating or examining physician indicating that Benzel was precluded from all work activities. Additionally, the Commissioner argues Benzel's alleged difficulty walking or sitting for more than twenty minutes at a time (Tr. 84) was adequately accommodated for by the inclusion of an occasional sit/stand option.

---

[3] There are no medical records from Benzel's alleged disability onset date (April 25, 2003) until he was injured in a motor vehicle accident in August 2005. Benzel received treatment for his back, knee, and foot impairments from various providers (including a family physician, orthopedist, pain specialist, chiropractor, and podiatrist) from August 2005 to October 2006. After October 2006 until his date last insured (June 30, 2008), Benzel received only sporadic treatment from his podiatrist. Beginning in January 2009, Benzel began treatment with an orthopedist.



The ALJ indicated he gave "some weight"[4] to the October 2005 opinions of Benzel's treating orthopedist, Dr. Bryan Springer, and his treating chiropractor, Dr. J.A. Maxwell. These treating sources found that Benzel was limited to performing six to ten hours of sedentary work a week.[5] (Tr. 271-272, 305.) Dr. Springer specifically found that Benzel was unable to stand for prolonged periods of time. (Tr. 272.) The only other opinion of record is a retrospective one from treating orthopedist Dr. William L. Lehman, who did not examine Benzel until April 2009 (approximately ten months after Benzel's last date insured). In July 2009, Dr. Lehman stated that Benzel was continuously totally disabled since 2003. (Tr. 323.) The ALJ gave "little weight" to this opinion.[6] Two state agency physicians declined to give opinions after reviewing Benzel's medical records, citing insufficient evidence. (Tr. 342, 402.)

In finding that Benzel had the RFC for light work, the ALJ wrote that two of Benzel's treating physicians concluded he was capable of performing sedentary work and that (during the relevant period) no treating or examining physician noted any specific restrictions precluding him from all work activity. (Tr. 68.) At the hearing, however, the vocational expert testified that a limitation to only six to ten hours of sedentary work per week "would be inconsistent with

---

[4] The ALJ discounted the opinions of Dr. Springer and Dr. Maxwell because they were given shortly after Benzel's accident and (unspecified) medical records revealed Benzel was capable of performing light work with limitations. (Tr. 69.)

[5] The ALJ discussed Dr. Springer's limitation of Benzel to "very limited sedentary work," but did not note the additional limitation that Benzel could only work six to ten hours a week. (See Tr. 68-69.)

[6] The ALJ gave Dr. Lehman's opinion "little weight" because it had to be an inference as there was no medical evidence from 2003 to August 2005. Additionally, the ALJ stated that Dr. Lehman's opinion of total disability was inconsistent with the opinions of Dr. Springer and Dr. Maxwell (presumably because they found Benzel could perform sedentary work six to ten hours a week). (Tr. 69.)



competitive employment." (Tr. 95.) Thus, it is unclear how the opinions of record support a finding that Benzel could perform light work.

The ALJ appears to base his RFC findings on an improvement in Benzel's condition after the October 2005 opinions were given. Although the ALJ correctly points out that there are gaps in Benzel's treatment history, he has not identified medical evidence supporting an RFC for light work. It may be possible to infer an improvement based on a lack of treatment, but it is unclear that the objective medical evidence supports this inference. A December 2005 lumbar spine MRI, performed approximately two months after Dr. Springer's opinion, indicated Benzel had moderate to severe spondylosis at L5 with apparent effacement of the exiting L5 nerve roots, and degenerative spondylosis at L2-3 with mild levoscoliosis and mild central canal stenosis. (Tr. 464.) A lumbar CT scan in January 2006 indicated moderate to severe spondylosis at L5-S1, annular bulge, apparent effacement of exiting L5 nerve roots, mild central canal stenosis at L4-5, and asymmetric narrowing of the right sided L2-3 disc space with disc bulge. (Tr. 466.) In September 2005, Dr. Springer noted there was no gross evidence of component loosening of Benzel's right knee, which was replaced (arthroplasty) in approximately 1996. (Tr. 274.) A bone scan on October 19, 2005, after Dr. Springer's opinion, indicated mild to moderate increased activity in Benzel's right knee which was thought to relate to either chronic postoperative change or mild loosening. (Tr. 427.) In April 2009, Dr. Lehman noted that lumbar x-rays indicated severe disc space narrowing at L5-S1 with facet arthropathy and very severe degeneration at L2-3. Right knee x-rays indicated definite loosening and quite substantial loss of bone about the medial side of Benzel's prosthesis. (Tr. 331-32.)

Based on the foregoing, the court finds that the ALJ's RFC assessment does not comply with SSR 96-8p, and the court cannot determine based on the record before it whether the ALJ's decision is supported by substantial evidence. Thus, remand is warranted on this issue.

**B.    Other Issues**

In light of the court's recommendation that this matter be remanded for further consideration, the court need not address Benzel's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Benzel may present his remaining arguments on remand, including that the ALJ erred in evaluating his credibility and the opinions of his treating physicians and chiropractor.

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

March 14, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).